# McHose *versus* Fulmer.

| 73 | 365 |
| 193 | 312 |

| 73 | 365 |
| 19 SC | 303 |

| 73 | 365 |
| 21 SC | 558 |

| 73 | 365 |
| 41SC 1 | 19 |

1. When a vendor fails to comply with his contract, the general rule for the measure of damages is the difference between the contract and market price at the time of the breach.

2. When the article cannot be obtained in the market, the measure is the actual loss the vendee sustains.

3. McHose, a manufacturer, contracted for iron from Fulmer, who failed to comply, and McHose could not supply himself in the market. *Held,* that the measure of damage was the loss he sustained by having to use an inferior article in his manufacture, or in not receiving the advance on the contract price upon contracts he was to fill relying on Fulmer's contract.

4. Bank of Montgomery *v.* Reese, 2 Casey 143, recognised.

March 18th 1873. Before READ, C. J., AGNEW, SHARSWOOD and MERCUR, JJ. WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Lehigh county:* Of January Term 1873, No. 165.

This was an action of assumpsit, brought January 25th 1872, by Henry Fulmer and Peter Uhler, trading as the Easton Iron Manufacturing Company, against Samuel McHose and others, trading as Samuel McHose & Co.

The cause of action was the following note :—

"$1237.25.                       Allentown, Oct. 27th 1871.

Sixty days after date we promise to pay to the order of Easton Iron Manufacturing Co., twelve hundred and thirty-seven dollars and twenty-five cents, at First Nat. Bank of Allentown, Penn., without defalcation, for value received.

SAMUEL McHOSE & Co."

The defendants filed an affidavit of defence, to wit :—

The plaintiffs and defendants entered into a contract about the 20th of October 1871, by which the plaintiffs agreed to furnish defendants with 100 tons of pig iron, to wit : 50 tons at $30 per ton, and 50 tons at $32.50, to be furnished in the months of October and November 1871. In October plaintiffs in pursuance of said contract did furnish to defendants 40 tons of pig iron to wit: 30 tons at $30 per ton, and 10 tons at $32.50, making total of $1225,

[McHose *v*. Fulmer.]

the amount for which the note in this case was given with interest added.

The residue of the iron according to said contract was to be furnished in the .month of November, and the defendants being engaged in the manufacture of iron, relying upon the undertaking of plaintiffs, made no other engagement for iron.   In the month of November the defendants gave notice to the plaintiffs that they were in need of said iron to wit, the 60 tons which the plaintiffs neglected and refused to furnish, although often requested so to do, in the months of November and December.   The contract for payment was notes at 60 days.

The defendants therefore say, that by the refusal of the plaintiffs to furnish said iron as per contract, they (the defendants) have suffered damage to an amount exceeding the whole amount of the note in which suit is brought.

The nature of the damage sustained by defendants is as follows:

The defendants are the owners of the Hope Rolling Mill, situated in the city of Allentown, and are carrying on the business of making merchant bar iron, and employ about sixty hands, and had heavy contracts for iron to be furnished in November and December.   By the neglect and refusal of plaintiffs to furnish said iron, defendants were obliged to get an inferior quality of iron than that which plaintiffs were to furnish, in order to carry on the business of said mill, and being inferior they lost the contract with the parties with whom they had contracted for the sale and delivery of iron, and sustained other serious damage and loss by the breach of said contract on the part of plaintiffs.

They afterwards made a supplemental affidavit of defence, " that by reason of the plaintiffs neglecting and refusing to comply with the contract set forth in said affidavit of defence, the defendants were unable to get the same quality of iron, and iron had advanced in price one dollar per ton, which would make $60 damages in price of iron.

" The defendants further say, that the loss of contracts and in the sale of manufactured iron greatly exceed the amount of the note on which suit is brought.   That defendants not being able to make good iron for the parties with whom they had contracts, they sustained losses as follows: With Brinton & Johnson, of Philadelphia, they sustained losses in iron returned, $639.47, which amount is composed of labor and freight in sending and returning said iron, and the damages for the loss of the contract with said Brinton & Johnson will exceed the sum of $600.   Making a total of more than the amount of said note.   That they have suffered other damages by reason of the failure of said plaintiffs to comply with their contract."

On the 17th of July 1872, the court (Longaker, P. J.) entered

[McHose v. Fulmer.]

judgment for the plaintiffs for $1218.45, the amount of the note and interest, "less $60 claimed as the appreciation of the iron."

The defendants removed the record to the Supreme Court and assigned the entering of the judgment for error.

*J. D. Stiles*, for plaintiffs in error.

*E. J. More*, for defendants in error.

The opinion of the court was delivered, March 24th 1873, by

SHARSWOOD, J.—When a vendor fails to comply with his contract the general rule for the measure of damages undoubtedly is, the difference between the contract and the market price of the article at the time of the breach. This is for the evident reason that the vendee can go into the market and obtain the article contracted for at that price. But when the circumstances of the case are such that the vendee cannot thus supply himself the rule does not apply, for the reason of it ceases: Bank of Montgomery *v.* Reese, 2 Casey 143. "It is manifest," says Mr. Chief Justice Lewis, "that this (the ordinary measure) would not remunerate him when the article could not be obtained elsewhere." If an article of the same quality cannot be procured in the market, its market price cannot be ascertained, and we are without the necessary *data* for the application of the general rule. This is a contingency which must be considered to have been within the contemplation of the parties, for they must be presumed to know whether such articles are of limited production or not. In such a case the true measure is the actual loss which the vendee sustains in his own manufacture, by having to use an inferior article or not receiving the advance on his contract price upon any contracts which he had himself made in reliance upon the fulfilment of the contract by the vendor. We do not mean to say, that if he undertakes to fill his own contracts with an inferior article, and in consequence such article is returned on his hands, he can recover of his vendor, besides the loss sustained on his contracts, all the extraordinary loss incurred by his attempting what was clearly an unwarrantable experiment. His legitimate loss is the difference between the contract price he was to pay to his vendor and the price he was to receive. This is a loss which springs directly from the non-fulfilment of the contract. The affidavits of defence are not as full and precise upon this point as they might and ought to have been, but they state that the defendants below had entered into such contracts, and that they were unable to get the same quality of iron which the plaintiff had agreed to deliver, and this, we think, was enough to have carried the case to a jury.

Judgment reversed, and a *procedendo* awarded.