# Edwin C. Weaver, Executor and Trustee, etc., Appellant, v. Lorenzo H. Cone.

*Action of deceit—Referee's findings—Adequacy of evidence.*

The question whether there was adequate evidence to support an action of deceit is a question of fact, and the finding of a referee will not be disturbed when an examination of the testimony precludes any conclusion other than that the conduct and language of the defendant were such as to deceive the plaintiff.

*Action of deceit—Measure of damages.*

The measure of damages in an action of deceit is compensation for the loss thereby sustained, and the evidence to ascertain compensation must be such as truly reaches this end.

*Measure of damages—Adequate compensation—Sale of stock induced by deceit—Contradictory evidence—Absence of evidence of market value.*

In the case at bar the plaintiff was induced by deceit to sell certain stock at a given price to a person who had already secured the majority of the stock of the company in question and who stood ready and willing to buy all the remaining stock outstanding, and who did in fact buy all such stock at prices higher than plaintiff, by reason of the deceitful representations of the defendant, was induced to sell for. *Held,* that plaintiff was entitled to recover the value of the chance to sell his stock and that the general rule as to market value being inapplicable under the peculiar conditions, the verdict of the referee as to the amount of loss will be sustained, it having been determined as to amount in a manner substantially the same as that pursued by a jury when assessing for land taken by the right of eminent domain, where the amount is fixed from conflicting evidence as to the difference in value before or after taking, or when fixing the amount of damages where it is to be measured by the difference between the contract price and the market value, the evidence as to the latter varies or is contradictory.

Argued Oct. 5, 1899. Appeal, No. 92, Oct. T., 1899, by plaintiff, from judgment of C. P. No. 3, Phila. Co., June T., 1892, No. 204, sustaining exceptions to referee's report. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Reversed. Opinion by BEEBER, J.

Exceptions to referee's report.

It appears from the record that this action was trespass to recover for deceit in which the plaintiff claimed to recover damages in the sum of $2,000, and by writing filed it was agreed that the case should be submitted to George Wharton Pepper, as referee, under the act of May 14, 1874.

The following facts appear from the referee's report:

Emmor Weaver, the original plaintiff, on January 23, 1892, was the owner of fifty shares of the capital stock of the Upper Delaware Transportation Company. Emmor Weaver died on January 12, 1893, and his son, Edwin C. Weaver, executor and trustee under his will, was substituted as plaintiff.

The total number of shares of this company was 1,300. On January 19, 1892, Lorenzo H. Cone, the defendant, sold to Edward Morrell, Esq., 690 shares, being a majority of the total stock; 608 shares were sold at $100 per share, and 82 shares were sold at $89.75 per share.

Mr. Morrell, after the purchase, informed the defendant that he might wish to purchase the minority stock, and asked the defendant's assistance, which he promised. There was no evidence of any consideration for this undertaking. Mr. Morrell subsequently did purchase all the minority stock, and the defendant, on several occasions, assisted in the purchase. On January 22, the defendant instructed F. G. Edwards to notify the minority stockholders of his sale, mentioning the name and address of Emmor Weaver. The next morning, January 23, Edwards called upon Emmor Weaver, at his residence, and delivered the defendant's message. At Mr. Weaver's request the message was repeated to Edwin Weaver, the present plaintiff. Edwards informed him that he could see the defendant at the office of a Mr. Flanagan, at noon of that day. The plaintiff, acting on behalf of his father, Emmor Weaver, went im-

mediately to the defendant's office; not finding him there, he left the following letter:

"Dear Sir: We would like you to turn our stock in with yours, mine 30 shares and father's. I believe he has 50 shares, a total of 80 shares. The gentleman who called at our house this A. M. told us he came to notify us of your sale. As you are not here I will leave this note and will try to get to Flanagan's at 12 M. as he said you would be there."

The defendant having received this letter went to Mr. Morrell's office, and asked whether he should bring the plaintiff there; he was told to take him to the office of a Mr. Worrell, a broker. The plaintiff called at Flanagan's office, and the defendant came out and saw him. The plaintiff inquired of the defendant to whom he had sold his stock; the defendant refused to tell who had purchased the stock, but offered to take the plaintiff to the broker. On the way, plaintiff asked what defendant had received for his stock—defendant at first said he ought not to tell, but upon the plaintiff then refusing to sell unless he knew, and being asked whether he had received $80.00 he replied that he had received $80.00.

The plaintiff, not knowing that the defendant was acting in the interest of the purchaser, accompanied him to Mr. Worrell's office, when he was offered $70.00 for his stock; this he refused stating that he would sell at the same price which the defendant had obtained, and said Mr. Cone said I ought to get $80.00. The defendant answered, "Yes; I thought the stock was worth $80.00," at which price the plaintiff sold his stock. This he did, relying upon the truth of the defendant's statement that he had received $80.00 for his majority interest, and in no way relying upon the opinion expressed by defendant in Morrell's office as to the value of the stock.

During the negotiations Mr. Morrell's representative, H. V. Massey, was in the adjoining room, with currency in excess of the purchase price, having come to Mr. Worrell's office as the result of the defendant's information.

The plaintiff returned home, notified his father of the sale; they went to their safe deposit box, obtained the stock, delivered it, and were paid therefor.

Within a short time of the plaintiff's sale the rest of the minority stock was purchased by Mr. Morrell. Dr. E. S. Wyc-

koff and J. A. Burton obtained $100 a share, the defendant being present at the sale. Mrs. Paxson sold at $95.00 during the latter part of January. Mr. Siter sold at $90.00, Mrs. Brooks sold eighty-nine shares at $90.00, Mrs. Price at $120, and the Fidelity Insurance, Trust and Safe Deposit Company, trustees, sold at $125.

No purchases of the stock other than that of the plaintiff were made through Mr. Worrell.

The referee having found that a cause of action existed by reason of defendant's deceit, as to the question of measure of damages, held in part as follows : " In other words, the question was a question for the jury under all the evidence—just as the Supreme Court of Pennsylvania has decided it to be in Weaver v. Cone, 174 Pa. 104. It is true that in that case the evidence of particular sales was not objected to, but (as observed before) all question as to the admissibility of that evidence is at an end if it be decided as a matter of substantive law that the plaintiff has a right to go to the jury upon the basis of the prices obtained by others. That the plaintiff has such a right is a point about which the referee entertains no doubt, and he so finds as a matter of law.

" In reaching this conclusion the referee has endeavored to submit himself to the guidance of principle and authority just as if Weaver v. Cone had not been decided. Had a different result been reached by him it would have become necessary to consider how far the Supreme Court in that case were to be taken to have passed definitely upon the points here. discussed. As it is, such an inquiry is unnecessary, for the referee finds that there was nothing novel in that decision, but that it proceeded upon principles which were already well settled.

" Having decided that the elements of a deceit are present in this case and that the jury is entitled to assess the damage, it follows that the plaintiff is entitled to the referee's finding. The referee accordingly finds for the plaintiff and against the defendant in the sum of $1,000. In exercising the function of a jury it is not necessary that the referee should state a legal reason for arriving at the exact sum found. It is sufficient to say that $1,000 represents the difference between eighty, at which the plaintiff sold, and one hundred, which the defendant received for the greater part of his holding."

Defendant filed the following exceptions to the referee's report:

[1. Because the learned referee, against the objection of defendant, admitted as competent evidence of the market value of the stock sold by plaintiff, various private sales of stock made under peculiar and very varying conditions.] [3]

[2. Because the learned referee based his assessment of damages upon the value of the stock ascertained or calculated from various private sales of the stock.] [4]

[3. Because the learned referee did not recognize as the only basis for ascertaining the market value of the plaintiff's stock the intrinsic value of the same, as stated by the plaintiff's own witnesses in cross-examination, namely, $75.00 per share.] [5]

[4. Because the learned referee in assessing damages disregarded the only competent evidence of the value of the stock, namely, its intrinsic value, which was from $75.00 to $80.00 per share, and fixed the damages by estimating the market value at $100 per share, based upon the private transactions made under peculiar circumstances, and which were objected to as incompetent evidence for that purpose.] [6]

[5. Because the learned referee, after correctly stating the principle of compensation in the action of deceit that " the plaintiff is entitled to be put into possession of his stock, or (as that is here impossible) to be put into as good a position as he would have been had he not sold it," then proceeded to estimate or guess at what the plaintiff might have sold his stock for had he not been deceived as he alleges, and in making this estimate uses as a basis the private sales of stock made at different times after much haggling by all sorts of people under very different circumstances and at prices varying from $90.00 to $125, and fixes $100 as the probable price which the plaintiff might have got had he not been deceived by defendant.] [7]

[6. Because the learned referee has arrived at his assessment of damages, not by estimating the market value of the stock based on the only competent evidence thereof, namely, its intrinsic value, but by guessing at the probable price the plaintiff might have gotten for his stock had he not been deceived by the defendant as alleged.] [8]

[7. Because the learned referee finds as a fact that there was no contradiction in plaintiff's testimony on the point of whether

he did or did not rely on the defendant's statements in making sale of his stock.] [9]

[8. Because the learned referee holds that the plaintiff was entitled to use and rely on the statement made by the defendant as to what he got for his stock, notwithstanding the warning given by the defendant that he ought not to tell the plaintiff the price, and notwithstanding the statement was extracted with much difficulty.] [10]

[9. Because the learned referee found as a fact that plaintiff was misled by defendant's statement notwithstanding the plaintiff's own testimony to the effect in one place that he knew that you cannot tell from majority stock (defendant's) what minority stock (the plaintiff's) was worth; that it (the minority stock of plaintiff) might be worth a good deal more.] [11]

[10. Because the learned referee found as a fact that the plaintiff relied on defendant's statement of the price he sold his stock at in the face of the plaintiff's own testimony, viz: " Q. You relied on the fact that he (defendant) sold at eighty, and not his opinion of the value of the stock? A. Not at all; I was offered one hundred and five for the stock before that."] [12]

These exceptions were dismissed by the referee and were sustained by the court below without an opinion filed. Plaintiff appealed.

*Errors assigned* were (1) in not entering judgment for plaintiff. (2) In entering judgment for defendant. (3–12) In sustaining defendant's exceptions, reciting same.

*F. H. Bohlen,* for appellant.—This case is ruled by the decision in Weaver v. Cone, 174 Pa. 104. That case arose out of the very same facts, the only difference being that Mr. Weaver was individually the plaintiff, and is here suing as executor of his father's estate. Both blocks of stock were sold at the same time and as one parcel; the same statement induced the sale of both.

The only possible ground for the objection to this evidence is that the sales are private sales and are of no value as tending to prove the actual selling value of plaintiff's stock.

The only Pennsylvania cases cited by the defendant which bear upon this point are cases upon the compensation to be re-

covered for real estate taken by corporations under the right of eminent domain. There the rule is that no particular sales of land in the neighborhood can be evidence of the value of the land taken. " The location of the land, its uses and products and the general selling price in the vicinity are the data from which a jury may determine the market value. The evidence offered involves a comparison of these various properties alleged to possess similar qualities with that in question as well as with each other:" CLARK, J., in R. R. v. Patterson, 107 Pa. 461, at page 474, citing R. R. v. Rose, 74 Pa. 362, Hays v. Briggs, 74 Pa. 373, and R. R. v. Hiester, 40 Pa. 53.

It is, however, the very province and function of a jury to solve such uncertainties as this, from a consideration of all the sales to say what was the actual value of the stock: Weaver v. Cone, 174 Pa. 104.

*Theo. B. Stork* and *S. Davis Page*, for appellee.—There are two complete defenses to this action of deceit: 1. Inadequacy of the evidence to support an action of deceit. 2. The absence of any competent evidence of damages suffered by the plaintiff.

This was not an ordinary action of deceit, such as the old cases, from Chandelor v. Lopus, down, have made familiar. The old cases were based on misrepresentation of fact, such as the solvency of a person to whom the plaintiff was about to give credit, the kind or quality of the thing sold, or of some fact affecting its value.

It was an essential, moreover, in all these cases that it should appear affirmatively that the plaintiff relied on the representation alleged to be false or fraudulent.

" Nothing in the whole course of the law seems better settled than that to maintain such an action (of deceit) it must appear that plaintiff knew and relied upon the representation alleged to be false and fraudulent:" SHARSWOOD, J., affirmed by the Supreme Court in McAleer v. McMurray, 58 Pa. 129.

Admitting, for argument's sake, that the plaintiff was entitled to something, the question then is to what. The referee conceded that that something to which he is entitled is to be placed in as good a position as if he never had been deceived, i. e., to have his stock back, or, as that is here impossible, to have its value back.

What was its value then and what was competent evidence of its value become points of vital moment. The value of plaintiff's stock was in reality a little less than what he got for it, $80.00 per share.

The referee was undoubtedly mistaken in this; private sales of stock are not evidence of market value, and are inadmissible as such. Weaver v. Cone, 174 Pa. 104, is not authority to the contrary, because the evidence of private individual sales in that case was there admitted without objection, and thus became evidence for all purposes, and the point could not be raised. The private sales were all to one purchaser, Mr. Morrell. Had he ceased to purchase no one would have bought at the prices he paid, nor, indeed, so far as the evidence went, at any price. The prices themselves made at these private sales were so various and so wanting in any rational basis as to negative any pretense that they represented market value, real value, or anything but the whim of the solitary purchaser.

Particular sales of either stocks or of real estate are not admissible evidence of market value. There is no instance where particular private sales of stock have been admitted as evidence of market value when objected to, so far as counsel has been able to discover: Graham v. Maitland, 6 Abbott's Prac. Rep. (N. Y.) N. S. 327.

Even a public auction sale of a lot of timber was held not improperly excluded as evidence of the value of another lot of timber in suit, there being no evidence that the two lots were similar: Lawton v. Chase, 108 Mass. 238.

Private or even public sale of either personal or real property are not admissible as evidence of market value, the objection to such sales being, as so ably and convincingly stated in the Pennsylvania cases cited below with regard to real estate sales, that each sale raises a new issue, and that often particular sales may be the result of fancy, caprice, or folly. The market value in real as well as personal property is the general selling price proved by the opinion of witnesses who show an acquaintance with the sales and current prices made by them: Hudson v. R. R., 60 N. W. Rep. 608; R. R. Co. v. Searles, 71 Miss. 744.

Where there is no market for the article or the shares and consequently no properly speaking market value can be shown, then the intrinsic value is the proper evidence shown by the opinion of those familiar with the particular property.

If the stock has no ascertainable market value the actual intrinsic value must be taken as the basis of valuation: Moffitt v. Hereford, 132 Mo. 513; Deck v. Feld, 38 Mo. App. 674; Douglas v. Merceles, 25 N. J. Eq. 144.

Market value depends upon the judgment of the community and a consideration of particular sales would lead to collateral issues as numerous as the sales: Pittsburg R. R. v. Rose, 74 Pa. 362.

"It would not do to fix the market value by special and it may be exceptional cases" (AGNEW, J., in Hays v. Briggs, 74 Pa. 373), "otherwise," he remarks, "there would be as many branching issues as instances."

The language employed in East Pa. R. R. v. Hiester, 40 Pa. 53, by THOMPSON, J., is peculiarly fitted to the present circumstances: "Such testimony (particular private sales) does not disclose the public and general estimate which in such cases, we have seen, is a test of value. It would be as liable to be the result of fancy, caprice, or folly as of sound judgment in regard to the intrinsic worth of the subject-matter of it."

It was only by conjectures such as these that the referee could have reached the conclusion that plaintiff might have sold his stock for $100 per share, and made his award accordingly. He cites no cases that are precisely in point to support it. So far as counsel are aware there is no case exactly similar in its facts to the present.

The case of Loewer v. Harris, 14 U. S. App. 615; 57 Fed. Rep. 368, lays down the principle, per WALLACE, J.: "It is not enough that the damages which may be recovered for a wrong or breach of contract are proximate in the sense that they are such as the wrongdoer must have contemplated as the probable consequences of his conduct; they must also be certain, in the sense that they are not problematical. Speculative and merely possible damages are not recoverable."

The damages or the loss here alleged is as speculative and problematical as those sought to be recovered in that case; there the loss was of the profits of the London sale not yet made; here it is the loss of the possible sale on better terms to Morrell. So in Express Co. v. Egbert, 36 Pa. 360, the only Pennsylvania case known to counsel which approaches in principle the present, the facts are dissimilar, and the decision is

merely dicta as to the principle, since the case was decided on another ground, viz: the improbability of the plaintiff gaining the profit, for the loss of which he sued.

OPINION BY BEEBER, J., December 16, 1899:

This was an action of deceit tried before a referee. Ten exceptions were filed to his report which were sustained by the court below. As that court filed no opinion we are at a loss to know which one was, or whether all of the ten exceptions were sustained. We can, however, arrive at a proper disposition of the whole case if we consider it in the aspects in which it is presented to this court by the defendant. He contends that there are two complete defenses to the suit, first, the evidence to support an action of deceit is inadequate, second, there is no competent legal evidence of damages sustained by the plaintiff.

Whether there was adequate evidence to support the action of deceit is a question of fact. The referee, in a very careful and well considered report, has found the existence of all the facts necessary to sustain the action. His finding in this respect is attacked by the defendant on two grounds. He contends that there was no deceit practiced by the defendant, and that the plaintiff did not rely on it, even if there was any deceit. As to whether there was any deceit it is fortunate that there is no substantial difference as to what it was. The witnesses on both sides of this question, being only the plaintiff and defendant, agree substantially in what was said, although the defendant says that the meaning which the plaintiff understood, as expressed by what was said by the defendant, was not justified by what the defendant did say. The plaintiff proved that he sold his stock at $80.00 per share because the defendant had told him that that was the price which he, the defendant, got for his stock, and that he, the plaintiff, relied on this when he sold. The defendant says that he told the plaintiff that he got that price for his stock, but that he could not tell him anything more about it. His counsel argue that from this language the defendant meant to say that he got at least eighty, and of course left unsaid whether he got anything additional. The defendant testifies that when he said, " I got eighty, but I will say nothing more about it," he meant to say that he got at least eighty. Even if we should agree that this is what the defend-

ant meant we are not surprised to find that the referee was not disposed to give as much credit to his testimony as he gave to that of the plaintiff; for even if defendant did only mean to convey the impression that he got at least eighty it can scarcely be said that he was entirely frank under the circumstances. He heard the plaintiff say to the broker representing the purchaser, that he would not take less than what defendant had received. This was the time for defendant to speak, because he could not fail to see that the plaintiff was fixing the price of his stock from what he had understood the defendant to say was the price he had got for his stock. That this is so appears also by the defendant's own testimony where he says that plaintiff when they came out of the broker's office said to him, " Is this all you got for your stock?—and I told him that was what I got." Had there been any doubt before, the answer to this question removes it. In view of this answer we do not see how the referee could have come to any other conclusion than that the conduct and language of the defendant were such as to deceive the plaintiff.

Did the evidence show that plaintiff relied upon the false statement of the defendant? Defendant contends that it does not, because plaintiff knew that the price at which defendant had sold his stock was not a fact that affected the value of his own stock, and also because his own testimony shows that he did not rely upon it. To sustain his contention the testimony is quoted which shows that plaintiff said that sometimes minority stock was worth more than majority stock, and that you could not tell from majority stock what minority stock is worth. It is argued from this that the plaintiff knew that he ought not and could not rely on the price at which the defendant sold his stock as a fact to affect the value of his own stock. But this argument overlooks the facts of this case. It must be remembered that the evidence shows that the plaintiff did not know who was the purchaser, and was groping about in the dark as to the real price which he could obtain for his stock. Under such circumstances, the very fact of the uncertainty of the relative value of the majority and minority stock may have been the reason why plaintiff preferred to fix the price at which he would sell his stock the same at which the defendant sold his. We do not think that the inability to judge the value of the minority

stock from what majority stock was worth throws any light on the question whether the plaintiff relied on the false statement. If anything, the uncertainty of the relative value would furnish an additional reason why it would be extremely probable that the plaintiff, under the facts in this case, would consider it the safest and best for him to fix the price of his stock the same as the price of the defendant's stock.

Still less force is there in the argument by defendant's counsel drawn from the plaintiff's testimony. This question was put to plaintiff: " Q. You relied on the fact that he sold the stock at eighty and not his opinion of the value of the stock? A. Not at all. I was offered 105 for the stock before that." It is strenuously urged that this evidence ought to have satisfied the referee that the plaintiff had not relied on the false statement. The referee, in his report, has shown that this answer standing alone by no means bears the interpretation put upon it by the defendant. It must be remembered that the testimony of the witness as a whole must be reconciled, if it can be, before we conclude that any part of it is deliberately false. With this rule before us it would be our duty to consider the whole of the plaintiff's testimony to see if it can fairly be said that he meant to convey the idea in his answer to this question which defendant contends he did. If we do this, it seems very clear that the referee was right. In his examination in chief he had said that he relied upon this statement. The question and answer quoted above is from his cross-examination. If there was any doubt as to what was really meant by this answer in his cross-examination it was relieved by the defendant himself in a few questions later where the following occurred: " Q. I think you said you were not influenced at all by the opinion of Mr. Cone and Dr. Wykoff's opinion as to the stock; it was merely the fact that Cone had sold at eighty. That was the determining fact in your mind? A. That was the determining fact in my mind." If there had been any obscurity before as to the real meaning of the witness it would seem that this answer, drawn out by the defendant himself, would show conclusively that the plaintiff solely relied upon the fact that defendant had told him that he sold at eighty. We have carefully considered all the testimony in the case, and we can see no reason whatever why the referee's findings of the facts should not be sustained.

The question of law involved in the case is whether there is competent legal evidence of damages sustained by the plaintiff. His damages are to equal the loss which he sustained by reason of the deceit practiced upon him by the defendant: High v. Berret, 148 Pa. 261. As was said by Mr. Justice AGNEW, upon the question of the proper measure of damages, in Kountz v. Kirkpatrick, 72 Pa. 376, " compensation being the true purpose of the law, it is obvious that the means employed, in other words, the evidence to ascertain compensation, must be such as truly reaches this end." In the usual case of a suit by the vendee against the vendor for the breach of his contract to deliver chattels, the general rule is that the measure is the difference between the contract price and the market value of the article at the time and place of delivery under the contract. But the jury are not necessarily bound by this rule if they can find another more in accordance with the justice of the case. They may have evidence of other kinds to show the value. The law lays down "no one mode as the exclusive one for settling the value of an article in market at or about a given time ; it is a matter to be left to the jury on the evidence:" McCombs v. McKennan, 2 W. & S. 216. If it appears that the difference between the contract price and the market value does not in reality show the loss for which compensation is to be made evidence will be received of other facts which show the actual loss : Theiss v. Weiss, 166 Pa. 9.

The reason of this rule is found in the fact that when the vendee is deprived of the chattels which the vendor had agreed to deliver he can go into the market and purchase others at the market value. " But it is manifest that this would not remunerate him, where the article could not be obtained elsewhere, or where, from restrictions on its production or other causes, its price is necessarily subject to very considerable fluctuations. . . . The case of stock is an exception to the general rule applicable to chattels. It is made an exception in obedience to the paramount obligation to indemnify the party for his loss. The rule of convenience gives place to the rule of justice. The moment we proceed, on this ground, to take it out of the general rule, we are obliged to substitute one that will do complete justice to the party injured:" Bank of Montgomery v. Reese, 26 Pa. 143. Whilst we do not understand that this

last authority decides that the case of sales of stock is always
excluded from the operation of the rule, we think it clearly
shows that if the rule, as applied to chattels generally, does
not measure the actual loss for which compensation is to be
given, it will not be applied. The plaintiff, in a case where he
brings a suit as vendee, is entitled to be put in the position he
would have been in had the vendor's contract been performed.
Where this can be accomplished by his purchasing other goods
at their market value, the excess of what he has to pay furnishes
a reasonably accurate estimate of the amount of his damage.
When, however, the circumstances are such that he cannot
supply himself the rule does not apply, for the necessary data
cannot be obtained. In such cases the actual loss must be
determined by other evidence which shows the amount of it
with a reasonable degree of certainty: McHose v. Fulmer, 73
Pa. 365. Absolute certainty in all cases is impracticable and
not required.

The facts in this case are peculiar. It is not the usual case
of deceit where plaintiff is induced to buy property, and the
measure of his damage is the difference between the price at
which he bought and its real value. On the contrary he was
induced to sell his stock by the deceit. Had it appeared that
the stock thus parted with could have readily been supplied
by a purchase in the open market, the difference between what
he got for his stock and what it would have cost to get other
stock of an equal amount might be a very fair measure of the
damage. This, however, is impossible, for the stock is now in
the hands of a single owner and not on the market. But to
apply such a general rule to a case where the facts are so pecu-
liar as they are in this case would not give the plaintiff com-
pensation for his loss, which is the great object of the action.
The stock of this company was limited in quantity and in the
hands of a comparatively few people. Immediately before the
plaintiff came to defendant, in obedience to a notice from the
latter, for the purpose of selling his stock, defendant had sold
to another enough stock to give him the majority. At the
same time he had agreed to assist the purchaser to acquire all
the minority stock of which plaintiff's was a part. Plaintiff
told defendant he intended to sell his stock at the price which
defendant had got, which he was induced to believe was $80.00

per share.   It further appeared that there was a purchaser who
had determined to buy all the rest of the stock and who actu-
ally did buy it, at prices ranging between $90.00 and $125 per
share.   By the defendant's deceit plaintiff was induced to part
with his at a very much less rate than what the others got.
Under such circumstances, with a purchaser ready and anxious
to buy every share of stock, the plaintiff, ready and willing to
sell, and induced by defendant's deceit to part with his stock,
lost his chance to deal with the purchaser as the other stock-
holders were doing or had done.   The value of that chance
could not be determined by a market value evidenced by pub-
lic sales, for the stock was not sold at such sales, nor could it
be determined by the intrinsic value of the stock, for none of
it was sold for that value from the time plaintiff got his notice
of the sales going on and determined to sell.   The other mi-
nority stock was sold for more than plaintiff got to a purchaser
who it was proved was determined to buy it all.   The price
which he was willing to pay was not fixed either by its intrin-
sic or by its market value.   This being the situation of the
parties, we cannot agree that the market value as evidenced
by public sales was the only criterion by which to measure the
plaintiff's loss.   To do so would be to abandon the proper ob-
ject of damages, which is compensation, at the behest of a rule,
which, at best, is not the sole or infallible test.   We agree with
the verdict which the referee found as to the amount of the
loss which plaintiff suffered by reason of the deceit.   It was
based on sufficient evidence and determined as to amount in a
manner substantially the same as pursued by a jury when as-
sessing damages for land taken by the right of eminent domain,
where they fix the amount from conflicting evidence of the
difference in value before and after taking, or when fixing the
amount of damage where it is to be measured by the difference
between the contract price and market value, the evidence as
to the latter varying or being contradictory.

We are satisfied that our conclusion is not in conflict with
the authorities.   The damages awarded are, in our opinion,
proximate in the sense that they are such as the wrongdoer
must have contemplated as the probable consequence of his
misconduct, and certain in the sense that they are not problem-
atical.   In the case of Loewer v. Harris, 57 Fed. Rep. 368, an
attempt was made to recover damages to be measured and fixed

in amount by the profits of a contract of sale which the plaintiff expected to make, but had not made, of the property which he had been induced to buy by deceit. This attempt failed because it was held that the proof did not show that there had been any binding contract made out of which profits could arise. There was no evidence, as in this case, that there was a purchaser who was, at the time of the sale to plaintiff, ready and willing to buy and who actually did buy all the property that there was of the kind bought by the plaintiff, nor that the person whose fraud induced the sale was acting in behalf of the purchaser, who, to his knowledge, intended to buy all the property of the kind of which plaintiff's was a part. The most that that case decides is that the profits of an expected but unexecuted contract of resale of the property purchased under the influence of deceit cannot be recovered as damages in an action for the deceit. The principle of our conclusion is sustained by the case of Adams Express Co. v. Egbert, 36 Pa. 360. That was a suit to recover damages for the failure of the express company to deliver the plaintiff's box of drawings of plans for an almshouse in time for him to compete for the premium to be given to the successful competitor. After showing that the loss of the opportunity to compete for the prize was not too remote to be considered, and that its worth is capable of being measured, Mr. Justice STRONG says: " Whether in the present case this plaintiff sustained any actual injury depended upon the degree of probability there was that he would have been a successful competitor if the contract had not been broken. If his plans were entirely defective, if they were suited better for a bridge than for an almshouse, it cannot be claimed that he was damaged." In our present case the evidence shows beyond question a purchaser for plaintiff's stock, the prices he was paying, the knowledge of the defendant that there was such a purchaser, and the intent of the plaintiff to sell at the same price at which defendant had sold. All these facts being clearly established, the loss of the opportunity to sell, which defendant's deceit caused plaintiff, was not too remote to be considered, and its worth was capable of being measured.

The judgment of the court below sustaining the exceptions to the referee's report is reversed, the exceptions dismissed and the report of referee is confirmed with costs to be paid by the appellee.