## Huntingdon Malleable Iron Company v. Bills, Appellant.

*Contract—Sale—Set-off—Profits—Proof of deliveries.*

In an action to recover for goods sold and delivered where the defendant claims a set-off for loss occasioned by failure to deliver some of the goods ordered, the defendant cannot show loss of profits on future deliveries, where it appears that by the expenditure of a small sum he could have placed himself in a position to procure the goods from parties other than the plaintiff.

*Contract—Settlement—Note—Compromise.*

In an action on a promissory note where it appears that the plaintiff, a foundryman, had refused to return certain patterns until his account was settled, and only returned them when the defendant sent the note in controversy with a letter, stating that the note was for balance due, and was sent to be " conciliatory," binding instructions for plaintiff were proper.

Argued Oct. 16, 1902. Appeal, No. 95, Oct. T., 1902, by defendant, from judgment of C. P. No. 5, Phila. Co., March Term 1901, No. 662, on verdict for plaintiff, in case of Huntingdon Malleable Iron Company v. Armstead O. Bills. Before RICE, P. J., BEAVER, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit for goods sold and delivered. Before MARTIN, P. J.

The facts appear by the opinion of the Superior Court.

*Errors assigned* were (1) in excluding evidence as to profits on future deliveries ; (2) in giving binding instructions for plaintiff.

*James S. Williams*, for appellant.—The defendant had a right to recover loss of profits : Griffin v. Colver, 16 N. Y. 489 ; Wolcott, Johnson & Co. v. Mount, 36 N. J. 262 ; 1 Sedgwick on Damages, sec. 174 ; Chicago, etc., R. R. Co. v. Ward, 16 Ill. 522 ; Hammer v. Schoenfelder, 47 Wis. 455 ; Kramer v. Messner, 101 Ia. 88 (69 N. W. Repr. 1142) ; Pittsburg Coal Co. v. Foster, 59 Pa. 365 ; Cory v. Thamas Iron Works, etc., Co., L. R. 3 Q. B..Div. 181 ; Schulze, etc., Co. v. Great Eastern Ry. Co., L. R. 19 Q. B. Div. 30 ; Davis v. Talcott, 14 Barb. 611 ; Rogers v. Bemus, 69 Pa. 432 ; Hubbard v. Rowell, 51 Conn. 423 ; Harrow Spring Co. v. Whipple Harrow Co., 51 N. W. Repr. 197 ; McHose v. Fulmer, 73 Pa. 365.

The defendant has not in any manner waived his right to damages : Lenox v. Fuller, 39 Mich. 268 ; Warren v. Cole, 15 Mich. 265 ; Hurst v. Trow Printing, etc., Co., 2 Misc. Rep. 361 (22 N. Y. Supp. 371) ; Skinner v. Tinker, 34 Barb. 333 ; In re Kelly, 51 Fed. Repr. 194 ; Strack v. Hurd, 41 N. Y. St. Rep. 777 (16 N. Y. Supp. 566) ; Lantz v. Vermont Life Ins. Co., 139 Pa. 546 ; Fitch v. Woodruff & Beach Iron Works, 29 Conn. 82 ; Coursin v. Penna. Ins. Co., 46 Pa. 323 ; Fox v. Harding, 61 Mass. 516 ; Reed v. Penrose, 36 Pa. 214 ; Louden v. Tiffany, 5 W. & S. 367.

*W. Horace Hepburn*, with him *William A. Carr* and *Sidney L. Krauss*, for appellee, cited : Thompson v. Lyons, 54 N. Y. Superior Ct. 101 ; Bigler v. Morgan, 77 N. Y. 312 ; Kerns v. Prudential Ins. Co., 11 Pa. Superior Ct. 209.

OPINION BY BEAVER, J., December 13, 1902 :

Plaintiff entered into a contract with the defendant, on May 12, 1900, for furnishing for the use of the defendant all the malleable iron work for defendant's trade, "the iron to be furnished to be of quality suitable for our use, to be made from gated patterns in good order to be furnished by us, deliveries to be made within reasonable time after your receipt of respective patterns and orders."

Difficulties arose at sundry times in relation to the compliance by the plaintiff with the terms of the contract, particularly as to the furnishing of castings from pattern No. 17, which was one of four several castings which together constituted a tool

or device for setting saws. Much correspondence ensued and, on January 26, 1901, the defendant wrote plaintiff as follows: " We are paying you more for the castings under our present contract with you than we have paid for the past five years to any other foundry. What we should like you to do is to be very open and frank with us and say whether you intend to fill our orders on pattern No. 17 or not. If you cannot do it, we will make an effort to make up another gate of patterns and put them with another foundry, in order not to lose our business on this particular tool." Later in the same letter it is said : " If we were ordering unusual quantities with you, for the sake of getting a low price, it would be another thing entirely. We can buy these castings at same or less price."

The appellant's first assignment of error relates to the offer of testimony in regard to profits upon contracts for saw sets, in the manufacture of which the castings from pattern No. 17 were required. The defendant proposed to ask the witness : " Just explain what would have been the profits that you would have made, had you received these castings and been able to fill that order. " The objection to the testimony thus offered was sustained and the defendant assigns this for error.

The defendant upon the stand had previously testified : " Q. Would it have been possible for you to have bought these goods in the market anywhere ? A. Impossible. Q. As I understand you, they are made from your own particular patterns ? A. Yes, sir, our own designs ; we are the originators." The witness had not said, and could not have said, in view of what he had previously written, that it would have been impossible for him to have procured these castings elsewhere. We think, therefore, that the ground had not been laid for the testimony as to future profits which was ruled out. It is true that, under certain circumstances, recovery could be allowed for profits upon a contract for the future delivery of goods which the vendor has been prevented from delivering by reason of the breach of the contract for the delivery of the materials out of which such goods were to be manufactured. The rule is well stated in McHose v. Fulmer, 73 Pa. 365 : " When a vendor fails to comply with his contract, the general rule for the measure of damages undoubtedly is the difference between the contract and the market price of the article at the time of the breach.

This is for the evident reason that the vendee can go into the market and obtain the article contracted for at that price ; but, when the circumstances of the case are such that the vendee cannot thus supply himself, the rule does not apply, for the reason of it ceases : Bank of Montgomery v. Reese, 26 Pa., 143. 'It is manifest, says Mr. Chief Justice LEWIS, that this —the ordinary measure—would not remunerate him, when the article could not be obtained elsewhere.' If an article of the same quality cannot be procured in the. market, its market price cannot be ascertained and we are without the necessary data for the application of the general rule." If the appellant had shown, as already intimated, that it was impossible to procure castings similar to his No. 17 pattern in the hands of the plaintiff, he might have invoked this rule but he did not show that it was impossible. On the contrary, the correspondence above quoted showed that it was only necessary for him " to make up another gate of patterns and put them with another founder, in order not to lose our business on this particular tool." Another general rule, well stated in 3 P. & L. Dig. of Dec. 4586, is : " Where plaintiff is required to incur expenses to prevent a greater loss, by reason of the defendant's breach, such expenses may be recovered. Where the plaintiff can reduce or escape the damage caused by the defendant's breach, by an expenditure of a reasonable sum, the recovery is limited to that sum." It is evident here that the expense of a new gate of patterns would have been all that was necessary to enable the defendant to secure castings of No. 17 at the same or a less price than he had agreed to pay the plaintiff in time to have saved any loss of " business on this particular tool." We think, therefore, that on the defendant's own showing he was not in a situation to demand or to give evidence in regard to a loss of profits on contracts for future delivery.

The court below gave binding instructions for the plaintiff and all of the other assignments relate thereto. January 29, 1901, plaintiff wrote the defendant, in answer to complaints in regard to the delay in furnishing castings from pattern No. 17 : " Frankly, under the circumstances, in all justice to yourself, we could not conscientiously object to your withdrawing your patterns, especially when it has been impossible for us, under existing conditions, to turn them out fast enough for you, and

further when they may be possibly placed for a lower figure and in a foundry situated to turn these castings out for you in quicker and greater quantities." In reply to this defendant, by wire, directed the return of his patterns and, on February 5, 1901, plaintiff wrote: "In reply to your telegram at hand to-day, we beg to advise that we have balance of your patterns ready for shipment but must request that you favor us with check in full to date, as per statement of February 1, on receipt of which we will forward your patterns immediately." In reply to this demand, the defendant wrote, February 6, after giving terms of settlement and referring to the difficulties and hardships which he had undergone: "However, we must have our patterns without further delay. In order to be conciliatory and to avoid confusion and delays, we enclose a short note for thirty days for balance due—$204.25—according to enclosed statement. The accounts will not be due at the expiration of thirty days. Now, please send along the patterns, without any further controversy." It will thus be seen that the defendant secured his patterns by the forwarding of a note for $204.25 which he says was "for balance due" and "in order to be conciliatory." There was undoubtedly a controversy as to the return of the patterns, the plaintiff refusing to return them, without a settlement for the balance alleged to be due for castings already furnished. The defendant secured the patterns by sending the note upon which this suit is founded. Can it be doubted that this was a compromise of the differences between plaintiff and defendant and that it was a settlement, as the defendant says in his letter enclosing the note, "for balance due" the plaintiff?

The transaction was in writing and was to be construed by the court. After a careful examination of all the evidence in the case, we cannot see that there was any error in the construction which the court below placed upon the contract and the correspondence which grew out of it, taken as a whole. The assignments of error are all overruled and the judgment is affirmed.