# Withrow *v.* Walker, Appellant.

*Damages—Conversion—Trespass.*

1. In an action of trespass for conversion, the measure of damages is the value of the goods at the time of the conversion, to which the jury may add interest up to the date of the verdict, unless there are unusual circumstances attendant upon the conversion or detention, such as willful wrong, fraud or outrage, when the jury may give more.

2. In such a case if the person guilty of the conversion, makes a misstatement to the owner of the goods, and the latter incurs expenses legal and otherwise, he may recover, but he must show to the jury what the expenses were; if he merely states a lump sum, a verdict for such amount will not be allowed to stand, but will be reduced to the value of the goods.

Argued April 21, 1909. Appeal, No. 42, April T., 1909, by defendant, from judgment of C. P. Washington Co., Aug. T., 1907, No. 170, on verdict for plaintiff in case of C. M. Withrow v. Oliver Walker. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and HEAD, JJ. Reversed.

Trespass for the conversion of a mowing machine. Before TAYLOR, J.

At the trial it appeared that the defendant when he moved on a farm as a tenant, found an old mowing machine on the premises which the plaintiff had previously purchased at an administrator's sale, but had not removed. The price paid at the sale was $2.00. The defendant sold the machine to a junk dealer for $1.50.

The court charged in part as follows:

[Mr. Walker, the defendant, admitted on the witness stand that he did sell this machine and received for it $1.50 from a junk dealer who came that way. The measure of damages, under those circumstances, going to the plaintiff would be the fair market value or price of the machine that he so sold, and which was admittedly the property of the plaintiff and in which the defendant had no property, would be the fair market value or price of it at that time, and the evidence on that point is that

he purchased it at public vendue or outcry, when he bought it
a short time previous, and paid the sum of $2.00 for it.] [2]

[Now, gentlemen of the jury, if this was all there was in this
case we would say to you that you should find for the plaintiff
in the sum of $2.00, or even if this was a slight mistake Mr.
Walker had made in selling this machine, the property of an-
other, we would say to you that no further element of damage
ought to be considered by the jury, than the $2.00 which Mr.
Withrow paid for the machine, if you should find that its fair
value; but Mr. Withrow testifies that when he went to get the
machine and found it gone from the place he was permitted to
leave it, he tells you how he had difficulty, where he had left it
when he bought it at the sale where it had been knocked down
at public vendue; that he had some difficulty in finding Mr.
Walker, the new tenant on this farm, and found him away over
in a back field some place on the farm at work, and he testifies
he inquired of Walker what had become of that machine of his
that was there at the corncrib, and Withrow testifies that
Walker, the defendant, began at once to deny that he knew
anything about the machine, denied that he sold it, or knew
where it was or knew anything about it, and that caused
Withrow to search for it at the various junk yards along the
river towns and put him to the trouble and expense of tracing
where his machine had gone, and he says to the extent that he
visited various junk yards and found it in the junk yard of this
witness, the junk dealer who was upon the stand here. Withrow
swears that he got out a search warrant first for this particular
junk yard and when he found the machine he then caused the
prosecution of this junk dealer for the larceny of his machine,
and when the junk dealer was called to account for committing
the offense of the larceny of this machine the junk dealer dis-
closed at once that he had bought that machine from Mr.
Walker, the defendant here, and then for the first time Walker,
the defendant, admitted he had sold it to this junk dealer.] [3]

[Now, according to the testimony of Mr. Withrow, plaintiff,
and his witnesses, he had been at Mr. Walker's and asked about
the machine and, as he testified before, he, Walker, denied that
he knew anything about this old machine, when he did, and

knew he had sold it to this junk dealer, and he now goes on the stand and swears that he sold that machine to this junk man and the manner in which he sold it. Now, if that is the case, if you believe the story of the plaintiff, and Mr. Walker as he now testifies, why didn't Mr. Walker tell Mr. Withrow that when he first went there, is a pertinent inquiry for you. Well, he says he did; he says when Withrow came there asking for his machine he told him that he did not know whose the machine was but he sold it to the junk dealer. Now there is a direct contradiction between those two men, and if he did tell him that, what would have been the necessity for Withrow going and suing the junk dealer, if Walker had told him, when he went up there inquiring about this machine of Withrow's, that he had sold it, as Walker said he did—what would have been the necessity of Withrow going and making the information against the junk dealer?] [4]

[So if Mr. Walker could in the first place have prevented any expenses that Mr. Withrow was necessarily put to in ferreting out where his machine was and who took it, why he ought to have done so, when he knew that he sold it, if he did. Under circumstances of that kind, if you find that to be a fact, you can readily see that a man who kept the truth back when there wasn't any occasion for it, if he did, and put the other man to the expense of tracing his property that he had disposed of and pocketed the money, then we think a proper element of damage to enter into the case which is declared for fair market value or along with the price of the machine, would be what reasonable expense the owner of his property was put to in finding his machine, tracing it, as though it had been stolen from him, and the supposed thief.] [5]

[Now, gentlemen of the jury, there is another machine fairly in this case, the one that was in the old barn, and the uncontradicted evidence is that at the time that Mr. Walker told Mr. Withrow to take that other machine that was in the old barn, that that was a machine that didn't belong to Mr. Walker then; he admits that he didn't own it at the time he told Withrow to take it for the one gone from the corncrib, but Withrow swears he had purchased it also from Duvall's administrator; and no doubt if it had been anybody else than Withrow that did really

own the machine there likely would have been a lawsuit over that machine also, because Withrow went and took that machine from the barn, he said he did, because it was his, he bought it from Al Duvall, the man that was settling up Jake Duvall's estate.] [6]

[Now, gentlemen of the jury, the plaintiff here would be at least entitled to recover the fair market value or price of his machine at the corncrib under the undisputed testimony in the case. Now, whether you allow him any of the damages he has sued for here by way of expenses in tracing it depends on whether the defendant Walker acted frankly when Withrow went up there and asked where his machine was, whether he told where it was or whether he kept it secret and deceived him about his part in the transaction and put Withrow to the expense in finding out really where it was and finally tracing it back to Mr. Walker as the party having disposed of it. It is not testified here in dollars and cents the expense of tracing up the machine, but Withrow testifies to what he did and the places he had to visit and all the kind of trouble he had and the time it took, and it is for you to say, gentlemen of the jury, with these facts, if found by you to be facts, how much damages he ought to be allowed for that. The plaintiff swears that, in the whole, including the price of the machine and the other damages he specifies amount to $40.00. You could find in that amount or you could find in any less amount or in no damage; in case you find he had not reasonably incurred $38.00 worth of expense in finding, or any less amount as damages, what the evidence uncontradicted shows to have been the sale by Mr. Walker of Mr. Withrow's mowing machine at the corncrib for $1.50. You are the judge of the credibility of the parties and their witnesses.] [7]

Verdict and judgment for plaintiff for $16.58. Defendant appealed.

*Errors assigned* amongst others were (3–7) above instructions, quoting them.

*Vernon Hazzard,* with him *George L. Schuyler,* for appellant.

*James R. Burnside*, for appellee.

OPINION BY RICE, P. J., October 11, 1909:

The first assignment alleges error in the exclusion of evidence. The evidence offered was relevant, but as no exception was taken to the ruling the assignment must be dismissed. Besides that, the evidence, though at first excluded, was subsequently admitted when its relevancy was shown. So no harm was done.

The remaining assignments relate to the charge of the court. The action was brought before a justice of the peace, and for a cause of action of which justices of the peace have jurisdiction, namely, the conversion of a personal chattel. The cause of action remained the same when the case was brought into the common pleas by appeal, and the measure of damages was that which applies in the common-law action of trover, now trespass. The general rule as to the measure of damages in such action is well settled to be the value of the goods at the time of the conversion, to which the jury may add interest up to the date of the verdict, unless there were unusual circumstances attendant upon the conversion or detention, such as willful wrong, fraud or outrage, when the jury may give more: Berry v. Vantries, 12 S. & R. 89; Taylor v. Morgan, 3 Watts, 333; Neiler v. Kelley, 69 Pa. 403; Learock v. Paxson, 208 Pa. 602. There may be other cases in which more may be given than the value with interest, arising out of the nature of the chattels, but this class of cases need not be considered here.

In one view of the case the measure of damages would have been the fair market value of the chattel alleged to have been converted by the defendant, as the learned judge correctly instructed the jury at the outset of his charge upon that subject. But as this might have been more or less than the price ($2.00) the plaintiff paid for it, an instruction that if the jury found in his favor their verdict should be for the price he paid would have been erroneous. There is one part of a sentence in the charge, which, taken by itself, might bear that construction. This, however, was qualified in the same sentence by adding, "if you should find that its fair value." This qualification, taken in

connection with the appropriate instruction at the outset, freed this part of the charge from reversible error.

But there is another view which the jury could take. There was evidence from which they could find that the plaintiff bought the chattel and left it temporarily on the premises with the consent of the vendor; that the defendant, a succeeding tenant, sold it to a junk dealer who removed it; that when the plaintiff came to the premises to take it away the defendant denied any knowledge of the chattel; that in course of the plaintiff's efforts to ascertain its location he had a search warrant issued and thereby found the chattel on the premises of the junk dealer, who told him he had bought it from the defendant; and that they then went before the justice of the peace and the accused told him the tale, whereupon he was discharged. What other search the plaintiff made, the time occupied therein, and the specific amount of any expense he incurred is not shown by the testimony. The plaintiff, being asked what damages he sustained, contented himself with answering: "Well, the value of the machine and the cost I was put to in the other case and lost time, must have $40.00." The learned judge properly told the jury that whether any damages should be allowed "by way of expense in tracing" the machine depended on their determination of the disputed question of fact whether the defendant denied all knowledge of the machine, and thus deceived the plaintiff, when the latter went for it. We cannot say that the court ought to have withdrawn from the jury's consideration evidence as to the defendant's deception, and to have charged them that in awarding damages they could not go beyond the value of the machine at the time of the conversion and interest on that sum to the date of verdict. But in instructing the jury that they might award the plaintiff the full amount of his claim upon the theory, as inferable from the context of the charge, that his testimony would warrant a finding that he had been actually damaged to that amount, greater latitude was given than the evidence warranted. Not only was his testimony vague and indefinite as to "lost time" and how he lost it, but it was wholly insufficient to warrant a recovery for the cost he was put to in the larceny case, and would be so even if he had

shown the amount and nature of that expense. As it is impossible to determine from their verdict to what extent the jury awarded compensation on account of these two items of the plaintiff's claim, particularly that for the cost he was put to in the larceny case, there is nothing to be done but to send the case back for a retrial, unless the plaintiff elects to remit from the judgment all beyond the value of the chattel, with interest from date of conversion.

The contentions that the charge as a whole gave undue prominence to the testimony of the plaintiff and was disparaging to the testimony of the defendant and defendant's witnesses, and that as a whole it was biased, misleading, incomplete and unfair, are not sustained. But as the case may go back for retrial we deem it worth while to comment on that portion of the charge where the learned judge said: "Now, if that is the case, if you believe the story of the plaintiff, and Mr. Walker as he now testifies, why didn't Mr. Walker tell Mr. Withrow that when he first went there? is a pertinent inquiry for you. Well, he says he did; he says when Withrow came there asking for his machine he told him that he did not know whose the machine was but he sold it to the junk dealer. Now there is a direct contradiction between these two men, and if he did tell him that, what would have been the necessity for Withrow going and suing the junk dealer, if Walker had told him, when he went up there inquiring about this machine of Withrow's, that he had sold it, as Walker said he did,—what would have been the necessity of Withrow going and making the information against the junk dealer?" The plain answer to this inquiry is that, so far as the evidence shows, there was no necessity, and we think the jury should have been so instructed if they found the fact to be as testified to by the defendant. But the remarks of the learned judge taken in connection with what immediately follows seem to suggest the thought that the action of the plaintiff in prosecuting the junk dealer tends to corroborate him and to lessen the probability of the truth of the defendant's assertion. Perhaps this is not what was meant, but if it is, significance was given to the action of the plaintiff to which it was not entitled.

It is ordered that if the plaintiff, within thirty days from this date, shall file a paper in the office of the prothonotary of this court remitting $14.00 of the amount of the judgment the prothonotary shall enter on his record an order affirming the judgment as thus reduced; but if such paper shall not be filed he shall enter the order, "judgment reversed and venire facias de novo awarded."