## Fisher, Commissioner of Banking, v. Agricultural Trust Co.

*Insolvent trust company—Defaulting treasurer—Bond of—Depositors— First and second class claims — Trust funds — Savings accounts — Uncashed checks for deposit—Uncredited deposit—Collateral for loans—Disappearance of—Claim for—Money sent to trust company by registered letter—Money sent by young boy—Money paid for bonds—Amount of claim for bonds— Charge of note against deposit—Proof of claim under Act of May 23, 1913— Act of May 21, 1919.*

1. Where the amount of the bond of a defaulting treasurer of an insolvent trust company has been collected from his sureties by the Commissioner of Banking, acting as receiver, such amount is embraced within the words "money, funds, property and other assets" of the Act of May 23, 1913, P. L. 354, and is distributable first for "the payment of all depositors" as specified in said act.

2. Under the Act of May 21, 1919, P. L. 209, no claim other than that of a depositor can be allowed unless the claimant shall furnish to the Commissioner of Banking, liquidating the affairs of an insolvent trust company, a proper statement of his claim in accordance with section 42 of the act and within four months from notice, although the commissioner had knowledge of such claim.

3. Where certain moneys were paid to the defaulting treasurer of an insolvent trust company by an administrator on receipt "for trust fund," but, according to the books, the treasurer did not deposit the moneys and no account was opened, the transaction was not a deposit, and, on distribution, the claim cannot be allowed as a first class claim under the Act of May 23, 1913.

4. Where a claimant alleged that he had given a certain sum of money to a boy in his employ to deposit in such trust company, but such deposit was not credited in his pass-book or on a deposit slip or on the books of the company, and the boy testified that he made the deposit, but was uncorroborated, such claim for the amount of the alleged deposit should be disallowed.

5. Where it is shown that a check was made to, and endorsed by, such insolvent trust company as guardian of certain minors, but there is no record of any deposit in the trust company of such funds, the claim for the amount of such check cannot be allowed except as a second class claim.

6. Where a borrower from such insolvent trust company gave certain stocks as collateral and the collateral disappeared, the conditions of the agreement and time of the conversion and the variation of the market price not being known, he is entitled to recover, as a second class claim, the market value of such stock at the date of the receivership.

7. Under the Act of May 23, 1913, a *bona fide* holder of a check of such trust company, given in exchange for a check of a depositor of such company drawn thereon, is to be considered as a depositor and entitled to recover as a claimant of the first class.

8. Where a sum of money was paid by the trust company to a minor son of a depositor on an alleged order, which he testifies was a forgery and his signature thereto is not proven genuine, such payment will not be deducted from the balance for which he claims.

9. Where a depositor claims to have sent money to such insolvent trust company by registered letter, but there is nothing except his own testimony to show what the registered letter contained, and the books show no credit, but show a subsequent balance of his account, his claim for the amount of such deposit should be disallowed.

10. Where a depositor gave a check to the treasurer of such trust company for the amount of his deposit for the purchase of Liberty Bonds, but the bonds were never purchased and the treasurer appropriated the money, the depositor is entitled to a claim of the second class, and not of the first class, against the company.

11. Where a depositor ordered the purchase of certain bonds, for which a draft was charged up against his account before the trust company closed its doors, but he never received the bonds, his claim against the company is not as a depositor, but of the second class.

12. Where a borrower from the insolvent trust company deposited as collateral certain bonds, or where a customer paid money for the purchase of certain bonds, which bonds disappeared and it is not known when they were stolen, he is entitled to claim for such loss as a second class claim the highest market price obtainable for such bonds between the making of the loan or purchase and the failure of the trust company.

13. Where certain funds of a trust estate were deposited with such trust company and partly checked out, after which a check "Transfer to Trust" was signed by the trust company for the balance, which closed that account, but no new account was opened for the amount due, the amount due to the trust estate will be allowed as a second class claim.

14. Where a depositor, who was also a borrower, gave certain bonds to such trust company as collateral for his note for money borrowed and the bonds disappeared, the highest market value of the bonds between the time of making the loan and the failure of the trust company should be set off against the amount of the note, and, if insufficient, his deposit used to pay the balance, and the balance of his deposit constitutes a first class claim.

15. A depositor will be allowed a claim for the amount of his deposit, notwithstanding he was induced to sign a check for his balance, on which he lifted no funds, the transaction appearing to have been merely on paper.

16. Where bonds were left with such trust company to be exchanged and were embezzled, the owner has a second class claim for such bonds at the highest market price between the time of their deposit and the failure of the trust company.

17. Where a check was given to such trust company for the purchase of bonds and the treasurer embezzled the proceeds of the check, the amount thereof constitutes a claim of the second class.

18. Trust funds paid to the trust company as his successor by a retiring trustee, but not recorded in its books, constitute a claim of the second class.

19. A trust company has a right to charge up the amount due on a note against a deposit.

Exceptions to distribution of Banking Commissioner and to findings of court. C. P. Lancaster Co., Trust Book No. 25, page 253.

*S. Z. Moore, B. C. Atlee, John A. Nauman, Harold G. Beitler, Oliver S. Schaeffer, Charles W. Eaby, W. H. Kready, H. G. Ripple, Isaac R. Herr, John M. Groff, Harvey B. Lutz, Charles G. Baker, E. M. Gilbert, M. G. Schaeffer, H. Frank Eshleman, John E. Malone* and *John A. Coyle,* for exceptions.

*H. Edgar Shertz,* for Commissioner of Banking.

*Bernard J. Myers,* for Agricultural T. & S. Company.

LANDIS, P. J., Nov. 11, 1922.—By the Act of May 21, 1919, § 21, P. L. 209, the Commissioner of Banking is authorized, under certain circumstances therein enumerated, to take possession of the business and property of any corporation subject to the supervision of the Banking Department. In accordance with this authority, the plaintiff, as Commissioner of Banking, in June, 1921, took possession of all the assets of the Agricultural Trust Company. It is conceded that the trust company was at that time insolvent. By his deputy, he then proceeded to liquidate the same, and on May 20, 1922, he filed his account, and subsequently a schedule of claimants and claims, listing the same as first and second class claims. Numerous exceptions having been filed to the account and schedule, the matters of dispute covered thereby are now before the court for determination. These exceptions we will take up in their order as they were presented to us.

The real preliminary question which arises is, how the distribution of these funds shall be made. The general exceptions which have been filed by John A. Coyle and Charles G. Baker, Esqs., counsel for a number of parties, must, therefore, be first considered. They are to the effect that Charles D. Zell gave a bond of the Ætna Casualty and Surety Company to the Agricultural Trust Company in the sum of $20,000 for the faithful performance of his duties as secretary and treasurer of said trust company; that the amount of this bond was collected by the receiver and is embraced within his account, and that this money should be distributed to all the creditors, and not alone to those of the first class.

3 D. & C.

The Act of May 23, 1913, P. L. 354, provides "that in case of any distribution of the money, funds, property or other assets whatsoever of any trust company in the course of its liquidation by legal process or otherwise, distribution shall be made and preferred in the following order, namely:

"1. To the payment of all depositors in the trust company, whether the deposits be subject to immediate check or only payable after specified notice or at the expiration of a fixed period, whether or not such notice has been given or such period expired at the time of such distribution. *Bona fide* holders for value of certified checks on such trust company, or of certificates of deposit issued by such trust company, or of checks or drafts of such trust company, given in exchange for or in payment of checks or drafts of depositors of such company drawn thereon, not exceeding the balance to the credit of such depositor, shall also be treated and considered as depositors within the meaning of this act.

"2. To the payment and discharge of all the remaining liabilities of such trust company. . . .

"3. The residue, if any, shall be distributed to the shareholders of the trust company . . . according to their respective legal rights."

Was, then, the bond of Zell included in the "money, funds, property or other assets" of the defunct trust company? It seems to me that no serious question can arise out of this proposition. It was given to the Agricultural Trust Company to indemnify the company "for such pecuniary loss of money, funds or other personal property belonging to the employer, or in the custody of the employer, and for which it is legally responsible, as shall be sustained by the employer by reason of any dishonest act or acts of any of the employees named upon said schedule, . . ." and it stood for the loss which might be occasioned thereby. If, then, this indemnity was embraced within the words "money, funds, property or other assets," it is distributable first for "the payment of all depositors" as specified in the act of assembly. There can be no doubt that it comes under the words of the act, and for this reason these exceptions must all be overruled.

The first exceptions presented on the hearing are those filed by John Rothfus, administrator of the estate of Jacob Rothfus, deceased. On April 27, 1921, the claimant received the following receipt:

"Received from John Rothfus, Adm. of Jacob Rothfus Est., of Lancaster, Pa., Fifty-nine hundred ninety-nine & 69/100 Dollars as payment for trust fund. THE AGRICULTURAL TRUST COMPANY.
$5999.69. By CHAS. D. ZELL."

This claim was classified by the receiver as belonging to the second class, and the exceptions allege that it should be embraced within those of the first class. The evidence showed that Zell received this money and did not deposit it, according to the books of the bank. Zell testified that it went into the general funds of the bank, but not as a deposit. What he meant by this I do not know. It is sure that no account was ever opened. If it was not a deposit, it cannot be allowed as a first class claim. The exceptions are, therefore, overruled.

The next claim is that of James B. Miller. The claimant had a savings account at the Agricultural Trust Company. On April 1, 1921, he deposited $9200, which was entered in his savings account book. On April 1, 1921, he checked out $1000, and on May 1, 1921, $2000. The claim for the balance of $6200 was disallowed by the receiver, for the reason that he found among the checks one dated April 4, 1921, for $9200. It was admitted that Miller did not

on that day get this amount of money, or in fact any money, and that he did not then have that sum owing to him on this account. Zell testified that he filled out the check; that the amount was withdrawn from Miller's account, but he got no portion of it and no credit; that it was given over to the bank towards the deficit, and that the evidence that the bank owed him money was his book, which shows a balance of $6200; that the book was continued as his general savings deposit and not his checking account. The claimant said that the signature to the check looked like his, and he may have signed it, but he could not say whether or not it was his, and that he did not sign any check for $9200. Zell said it was not clear to him why Miller signed the check, but he did sign it; "the reason for his signing it I don't remember; what was said in connection with it I don't remember." Under this statement of the facts, I am of the opinion that this was either a general deposit or a savings fund account, and, in either event, it should be allowed. The fund is to be distributed "to the payment of all depositors in the trust company, whether the deposits be subject to immediate check or only payable after specified notice, or at the expiration of a fixed period. . . ." I think this deposit falls within the wording of this portion of the act, and it should be allowed in the schedule of claims of the first class. Admittedly, Miller's money was on deposit. He never drew this $6200 from the account. While Zell likely in some way got him to sign a check for the whole deposit of $9200, yet the money was not paid, and the check was only used to cover up Zell's defalcation, and was purely a paper transaction. The exception is, therefore, sustained and the proportionate share of the claim for $6200 is allowed.

The next claim is that of Hyman Mishkin. The claimant was a depositor in June, 1921, and had a pass-book of the Agricultural Trust Company. He asserts that he made a deposit on June 2, 1921, of $200, consisting of $187 in currency and $13 in silver, which is not in his pass-book; that this deposit was not made by him personally, but by a boy of thirteen years, named Ralph Long, who was one of his employees. The bank book, he says, was there at the bank, He received no deposit-slip nor any other evidence of the deposit. The boy testified that on that day, about dinner-time, he deposited $200, and that he could not recognize the man to whom he gave it; that it was a stout man; that he did not have the bank book with him, and that he had $199 in bills and change to make a dollar. He is, however, not corroborated by any one nor by any circumstance. The ledger sheet of the Agricultural Trust Company showed that Mishkin made a deposit of $90 on June 3, 1921, and of $200 on June 13, 1921, but no deposit on June 2, 1921. It would appear from it that no such sum was deposited on June 2, 1921. The money may have been sent by Mr. Mishkin and not have reached its intended destination through the fault of some one else; but it has not been satisfactorily established that, as a deposit, it got into the possession of the trust company, as claimed. For this reason, the exception is overruled and dismissed.

An exception has been filed to the list of claims and schedule of distribution filed by the receiver because of the disallowance of the claim of Edna Cohn, Hyman Cohn, Harry Cohn and Bessie Cohn, of whom the Agricultural Trust Company was guardian. The claim was allowed as one of the second class, and the exception raises the point as to whether or not it belongs to the first class. The Agricultural Trust Company was appointed guardian of the above named minors, and gave its bond in the sum of $3000 and $1000. A check of the Metropolitan Life Insurance Company for $1893.35, dated Feb. 11, 1921, was made to the trust company as guardian, and endorsed by "The Agricultural Trust Company of Lancaster, Pa., as guardian of the persons and

3 D. & C.

estates of Hyman Cohn, Harry Cohn, Bessie Cohn and Edna Cohn, minors, by Charles D. Zell, Treasurer." While a photographic copy of the check was offered, it was not admitted, but the facts are as above indicated, and for the purpose of this investigation I will to that extent consider them. There is no record of any deposit in the trust company of these funds or of what became of them. A check was given by the Agricultural Trust Company, signed by Charles D. Zell, Treasurer, to S. Z. Moore, Esq., which, it is admitted, was in this estate. While it is most unfortunate that the money of these minors is lost (and, in my judgment, they should be on an equal footing with the depositors), yet, as we do not make the law, but only administer it, and there is no evidence that the guardian was a depositor when the trust company closed its doors, the claim cannot be allowed except as a second class claim. The exception is, therefore, overruled and dismissed.

The next exception to be considered is that filed on behalf of Nicholas P. Langadinos. It is admitted that Langadinos made loans from the Agricultural Trust Company on two notes, one of $8185.01 and the other of $3000. He gave as collateral security for the first note 100 shares of Midvale Steel, 100 shares of Lehigh Valley common, 100 shares of Chile Copper and 300 shares of Willys-Overland. On the second note he gave as collateral security 200 shares of Missouri Pacific. The collateral disappeared, and the question to be determined is what value shall be placed upon it. The amount claimed by the exceptant is $11,139.99. In Neiler v. Kelley, 69 Pa. 403, it is said by Mr. Justice Sharswood: "The general rule as to the measure of damages in an action of trover undoubtedly is well settled to be the value of the goods at the time of the conversion, to which may be added interest up to the time of the trial, unless there were some circumstance of outrage in the case, when the jury may give more: Jacoby v. Laussatt, 6 S. & R. 300; Dennis v. Barber, 6 S. & R. 420; Berry v. Vantries, 12 S. & R. 89; Taylor v. Morgan, 3 W. 333; Harger v. McMains, 4 W. 418. This rule may be considered to have been to some extent modified as to stocks, railroad bonds and other securities of a similar nature by the cases of The Bank of Montgomery v. Reese, 26 Pa. 143; Reitenbaugh v. Ludwick, 31 Pa. 131; Persch v. Quiggle, 57 Pa. 247, and perhaps others." See, also, Withrow v. Walker, 41 Pa. Superior Ct. 155. In Conyngham's Appeal, 57 Pa. 474, it was said by the same justice: "The stocks were still a mere pledge; their dividends and accretions belonged to the pledgor. After the unauthorized sale of them to third persons, they are also in equity chargeable with what would have been received had they retained them as they ought to have done until the equity of redemption in the complainant was foreclosed by a sale after notice in the manner prescribed by law. It follows that they must account to the plaintiff and the appellant for the value of the stock at the highest rate which it has at any time since attained in the market." In Learock v. Paxson, 208 Pa. 602, it was held that "in an action against a firm of stockbrokers by one of their customers to recover damages for the wrongful conversion and sale of the latter's stock, the measure of damages is the highest price for the stock between the date of the conversion and that of the trial." Mr. Justice Thompson, delivering the opinion of the court, said: "While it is true that in the case of conversion of ordinary chattels, the measure of damages is the value at the time of the conversion, yet, in view of the shifting character of the prices of stock in our stock exchanges, such rule would be manifestly inadequate. It has, therefore, been held that stocks are an exception to the rule in question. . . ." See, also, Sproul v. Sloan, 241 Pa. 284; Berberich's Estate, 264 Pa. 437. In this case we have not been given the data of the notes nor the conditions attached

to the collateral, nor has it been stated when the stock was converted. When, however, there is an insolvency and the claimant makes his demand in the distribution of the assets of the insolvent estate, the date of the receivership must, I think, fix the time from which the rights of all the parties are to be determined. The exception, subject, however, to the views herein expressed, is sustained and the claim is allowed as a claim of the second class.

The next claim is that of the Silver Springs Cemetery Association for $1246.83. On Nov. 5, 1920, this association had a savings account in the Agricultural Trust Company of $1246.83. On that day Howard G. Greider, the then treasurer, issued a check for that amount, payable to cash. At the same time, a check was signed for the same amount by Frank E. Herr, assistant treasurer of the Agricultural Trust Company, as follows:

"THE AGRICULTURAL TRUST COMPANY.

Lancaster, Pa., Nov. 5, 1920.

"Pay to Silver Spring Cemetery Ass'n or order Twelve hundred forty-six ........ 83/100 Dollars.

$1264.83.                         AGRICULTURAL TRUST CO.

FRANK E. HERR, Asst. Tr."

On Nov. 6, 1920, the account was marked closed. There was no deposit of the funds withdrawn in the trust fund account or the trust fund ledger, so far as the books of the company show. It is not contended that the treasurer of the Silver Springs Cemetery Association had no right to draw the check, nor that Frank E. Herr, assistant treasurer of the trust company, was not authorized to sign the check which was given in exchange for it. The Act of 1913 provides that "*bona fide* holders for value . . . of checks or drafts of such trust company, given in exchange for or in payment of checks or drafts of depositors of such company drawn thereon, not exceeding the balance to the credit of such depositor, shall also be treated and considered as depositors within the meaning of this act." This seems to cover the case before us. The Silver Springs Cemetery Association had a deposit of $1246.83 in the trust company. Its treasurer made a check to cash for that amount, and, at the same time, the assistant treasurer of the trust company made a check to the Silver Springs Cemetery Association for the same amount. While it does appear strange that the last check was not presented until after the failure of the trust company, the transaction was evidently an exchange of checks, and the claim is within the wording of the act. The exception is, therefore, sustained and the claim is allowed as one of the first class.

The claim of William Winkelman for $200 was disallowed by the receiver. The amount shown to have been due to him on the books of the Agricultural Trust Company, when the trust company closed, was $345. He claims that a check of $200 was charged against his account which he did not sign, and that his true balance was $545. It appears that the sixteen-year-old son of the claimant presented to the trust company the following order:

"Lancaster, Pa., May 23, 1921.

"Dear Sir: Please give my son *Two hundred dollars* ($200.00). I am sick in bed or I would come down myself. The boy which I am sending is my son and it is all right to give him the money.

"Please put the money in a sealed envelope so he don't lose it.

Oblige    MR. F. W. WINKELMAN."

3 D. & C.

It was testified by the exceptant that he never signed this order; that it is a forgery; that the boy has run away, and that he does not know where he has gone to. No evidence was presented to contradict him, and it has not been shown that the signature is that of Winkelman. Under this state of facts, I am obliged to sustain the exception.

The next exception to be considered is that filed by Elias Groff, Jr. The evidence presented shows that on June 6, 1920, the claimant deposited in the Agricultural Trust Company the sum of $568.60, and received a deposit-slip for the same. The money was given to Charles D. Zell, but it was not credited to Groff's account. He says he gave the deposit-slip to S. Z. Moore, Esq., his attorney, and in some way it has become lost. Mr. Moore says he saw the deposit-slip, signed by Charles D. Zell for the Agricultural Trust Company, and that he wrote the date and amount from the slip in Mr. Groff's deposit-book. Four other responsible witnesses testified that they saw this slip, whereas Zell and three clerks in the bank testified substantially that Zell was out of town from June 3rd, and only returned the night of June 6th, after the bank had closed. I am of the opinion that the weight of the testimony establishes the fact that the deposit was made, and for that reason the exception is sustained.

The next exception is to the disallowance of a claim made by Charles H. Enders. The testimony of Enders is that on May 10, 1921, he deposited at the Agricultural Trust Company some checks, among which was one of $200, given to him by the Master Tire and Rubber Company of Dayton, Ohio; that on May 19, 1921, the check was returned protested; that Zell said he would charge the check and protest against Enders's account, but that Enders said, "I don't want to do that, because it gets my book-keeping balled up; in place of making a deposit, I will just pay off the check, and it won't show up in my books in any way;" that he then gave Zell an amount to cover the check and $2.25 protest, and Zell gave him the check. When the trust company failed, the balance due the claimant on the books of the bank was $379.91, and he now claims that the true balance should have been $582.16; and that, as he owed the trust company, on a note, $500, the actual amount due him is $82.16. The books of the trust company show that Enders made a deposit on May 10, 1921, of $222.50, and that on May 19th a charge was made against him of $202.25. On May 23, 1921, he was credited with $200. Zell says the check was charged to Enders's account on May 19, 1921, and that on May 23, 1921, Enders came to the bank and made his deposit of $200 and got the protested check. Enders produces no check with which he paid the amount, but asserts the transaction was carried out in cash. I am not satisfied that this claim is conclusively proven. It would seem as if the deposit of $200 was the one Enders refers to as paying the check. If it was, the charge of $202.25 and the credit of the $200 make the account correct. In view of all the facts, I so find, and dismiss the exception.

Concerning the claim of Harry L. Overly for $1950, the exception raises the point that it should be allowed as a first class claim instead of being embraced within the second class, as found by the receiver. The facts are agreed upon by the parties. Overly was indebted to the trust company on two notes, one for $900, and the other for $700. He deposited as collateral for the notes Liberty Bonds aggregating a par value of $1950. He paid off the $700 note, but the $900 note is not yet due. The collateral was appropriated and sold out by Charles D. Zell, and the $900 note was marked paid by him, although Overly never paid it. The claim was allowed in the list of claims of the second class for $1000. Under this state of facts, it is clear

that Overly was not a depositor, and that the receiver, therefore, properly listed his claim as one of the second class. The exception is accordingly dismissed.

An exception has been filed by Samuel H. Dosch, to the effect that the sum of $300 should be allowed him as a first class claim. The facts, as shown on the hearing, were as follows: Dosch stated that on Feb. 2, 1921, he sent $200 in a registered letter to the Agricultural Trust Company, and never received credit for it. He presented a receipt for a letter addressed to the Agricultural Trust Company, but no return receipt was produced, and there is no evidence as to what the letter contained except the testimony of Dosch himself. No record appears upon the books of the trust company that a deposit of that kind was made. Dosch also claimed that on May 12, 1921, he deposited $150. He presented a receipt for a registered letter addressed to the Agricultural Trust Company bearing that date, and a return receipt signed "Agricultural Trust Co., Guy Zell," who was a clerk in the trust company. There is nothing but his own evidence to show what this letter contained; and his deposit-book and the books of the bank show that the deposit on that day was $50. In addition, the books of the bank show that on May 10th his account was overdrawn to the amount of $50.06, and that after the $50 deposit was entered on May 21, 1921, a deposit of six cents was made to balance the account. This same amount of six cents appears in his deposit-book. On his cross-examination he said that he could not tell whether he ever said anything to those connected with the trust company about the $300 which he claimed he had deposited. I am of the opinion that there is no sufficient proof that these sums were ever received from Dosch by the trust company, and I so find. The exception is dismissed.

The next claim is that of L. J. Denlinger for $2720.80. It is admitted that on May 24, 1921, Mr. Denlinger had on deposit at the trust company $2720.80, outside of other moneys due him. He at that time gave a check to Charles D. Zell for that amount for the purchase of $3000 of Third Loan Liberty Bonds. This check was, on the day it was given, charged up against his account, but Zell never purchased the bonds. The claim is made that this amount should be allowed to Mr. Denlinger as a first class claim. It would seem that the money was stolen by Zell; but while this would sustain a claim against the trust company, it cannot be considered as a deposit; for, with Denlinger's consent, the amount was taken out of his account. I think that the receiver properly listed this as a second class claim, and I, therefore, dismiss the exception.

An exception was filed by Alice Buchmiller for a deposit of $50, alleged to have been made by her on June 7, 1921. Her deposit-book shows a deposit of that amount on that date; but Zell testified it was not in his handwriting, and that he did not recognize it as the handwriting of any man in the bank. No record of this deposit was entered on the books of the trust company. W. C. Buchmiller testified that he took the $50 to the bank and deposited it at a window next to where Mr. Herr, the assistant treasurer, stood, but he did not know to whom he gave the deposit. He said that Mr. M. R. Royer, the president of the trust company, was by and saw him make the deposit. Mr. Royer was called and testified that he recollected the transaction; that he saw Mr. Buchmiller hand the money in, and that he at that time said it was $50. Mr. Royer also testified that he saw Zell putting up a deposit-slip for $50, though he does say that the entry in the deposit-book is not in Zell's handwriting. Under this state of facts, I think

3 D. & C.

the claim should be allowed as a first class claim, and the exception is, therefore, sustained.

The claim of J. B. Becker, who was not represented by counsel, but whose exception was filed by Mr. Sherts, counsel for the receiver, stands upon the following facts: Mr. Becker had a receipt for $11,000, and a check for $1000, making $12,000, which was given to Zell for the purchase of Liberty Bonds. It is admitted that the claim should be allowed for $12,000 as a second class claim, and the exception is sustained.

The claims of Drexel & Co. for $27,265.31 and the Commercial Trust Company for $17,577.28 are supported by the following admitted facts: The claims are for Liberty Bonds bought by the Agricultural Trust Company and not paid for, and it was, therefore, conceded that, even if allowed, they would be claims of the second class. But the real objection that is made to them is that they were not filed with the Commissioner of Banking within the statutory period, and, in fact, were not filed at all with him, although it is admitted that the Commissioner of Banking, prior to the schedule of distribution being filed, had notice that these parties had claims against the Agricultural Trust Company, the amounts, however, not being fixed nor agreed upon.

The 41st section of the Act of May 21, 1919, P. L. 209, provides that "when the commissioner shall have determined to liquidate the affairs of such corporation or person, he shall forthwith give written or printed notice to all depositors to produce to him their deposit or pass-books for settlement, stating in such notice the amount which the books of the corporation or person show to be due to each depositor, subject to outstanding checks, and notifying such depositors that, unless a settlement of the deposit or pass-books shall show a different amount to be due, or unless a depositor shall, within four months from the date of such notice, make proof in the manner hereinafter set forth, that the amount due to him differs from the amount as shown by the books of the corporation or person, the amount last mentioned will be conclusive as to the amount of the claim of such depositor, subject, as aforesaid, to any outstanding checks. The commissioner shall at the same time give written or printed notice to all creditors other than depositors, so far as known to him, to make proof of their claim in the manner hereinafter set forth, within four months from the date of such notice or be debarred from coming in upon the fund. He shall also advertise such notices to depositors and other creditors in a newspaper once a week for four successive weeks." Section 42 of the same act declares that "no claim other than the claim of a depositor shall be allowed unless the claimant, or some one for him if he cannot do so, shall furnish to the Commissioner of Banking a statement of his claim, together with a copy of any book entries pertaining thereto, or any note or other writing evidencing the same, verified by an affidavit in substantially the following form: 'I (name of claimant) do solemnly swear (or affirm) that the above is a true statement of my claim against (name of corporation or person); that there are no credits or allowances against the same except as therein set forth; that I have not directly or indirectly made or entered into any bargain, arrangement or agreement, express or implied, to take or receive, directly or indirectly, any money, property or consideration whatever to or for myself, or to or for any other person, firm or corporation whatever, other than my dividend as a creditor; and that there is no collateral security for said indebtedness, or any part thereof, held by me or by any one else other than as above set forth.' In case the claimant shall be a partnership or corporation, such affidavit shall be made by a member of the

partnership or by the treasurer or assistant treasurer of the corporation claimant, and the form thereof shall be modified accordingly."

. It seems to me that, under the provisions of these sections, it makes no difference whether or not the Commissioner of Banking had knowledge of these claims. It is admitted that the proof was not furnished to him in accordance with the 42nd section of the act above quoted, and as it is there provided that "no claim other than the claim of a depositor shall be allowed unless the claimant, or some one for him, . . . shall furnish to the Commissioner of Banking a statement of his claim," and so forth, it seems clear that these exceptions ought to be dismissed, and this is accordingly done.

The claim of the guardian of Ethel Wappenstein Harnish for $101.58, and also the claim of the guardian of Carl Wappenstein Harnish for $101.58 were allowed as second class claims. It now appears that these were trust accounts, and that the fund has since been found intact in the trust funds of the trust company. For this reason the exception is dismissed, and it is also ordered that the claims be stricken out as claims of the second class.

The facts as to the claims of the trustee of Ida Howett for $1100, of the guardian of Viola P. Howett for $663.33, and of the guardian of Mazie E. Howett for $663.33 are agreed upon. No record was found in the trust accounts of the Agricultural Trust Company of any of these claims, but they were allowed by the receiver as second class claims. They were trust funds and were never entered on the books of the trust company as deposits. It was claimed that they should be allowed as first class claims; but nothing has been presented to us to sustain that contention. They were properly allowed by the receiver, and the exception is dismissed.

The claim of Benjamin B. Leaman for $4076.60 is similar to that of James B. Miller, which we have already passed upon. A check dated March 31, 1921, for $4076.60, payable to the Agricultural Trust Company, Lancaster, Pa., and purporting to have been signed by Mr. Leaman, was offered in evidence. He stated that the signature to the check looked like his signature, but that he got no portion of these funds. He was unable to explain why he signed the check, if he did sign it. Charles D. Zell testified that he filled up the check, but that he did not think that Mr. Leaman received any value for it. He said that Mr. Leaman signed two checks on that day; that this check was for his balance, and that he did not know whether he told him anything about it. This seems to have been merely a paper transaction. I am, therefore, of the opinion that the exception should be sustained, and that the claim should be allowed as a first class claim for the amount for which it has been presented.

The next exception is filed by Harrison B. Long, in which he claims $1778.04 as a first class claim. The evidence is that on April 11, 1921, he went to the Agricultural Trust Company and asked whether they would have any bonds. He was told that they did not have any, but would have to send to a broker, and they asked him what he wanted. He decided to take Victory Bonds, and he named the amount at $1500. A draft to Chandler Brothers for $1488.04, dated April 6, 1921, for $1500 Victory Bonds, upon the Agricultural Trust Company, was paid and charged up against Long's account, according to the books of the bank and his deposit-book on April 11, 1921; and he had the deposit-book with that entry in it in his possession either on or after that date. It is unfortunate that Mr. Long has lost his bonds, but it seems to be clear to me that this money was not on deposit when the trust company closed its doors. He was entitled to be allowed his claim as a sec-

3 D. & C.

ond class claim, and in this regard I think the receiver was correct. The exception is now dismissed.

The exception filed by Isaac R. Herr, assignee of Jacob G. Redcay, needs little discussion. When the bank closed there was an account in the name of Jacob Redcay for $238.14. Mr. Redcay had a note in the bank of an amount larger than this, and the deposit was credited on the note and the account closed. The trust company had a right to do this, and it follows that there is no valid claim before us to be allowed. The exception is overruled.

The claim of R. B. Zell for $8500 was not allowed by the receiver, either as a first or a second class claim. Two receipts were presented, one dated Oct. 11, 1920, for $7000 in Fourth Liberty Bonds, to be exchanged for new bonds, and the other dated April 29, 1921, for $1500 Fourth Liberty Bonds, as payment for permanent bonds. These receipts were signed "The Agricultural Trust Company, by Chas. D. Zell." The evidence is that the claimant was the owner of $8500 worth of Liberty Bonds; that the receipts were in his bank box, and he sent the key to his son, Charles D. Zell, in order that he might get the bonds and exchange them. The claimant says that he never got his bonds. Under these circumstances, I think he is entitled to be allowed his claim as one of the second class. This is accordingly ordered, and the exceptions are sustained to that extent.

The claim of H. W. Ecklin is for $300. The undisputed evidence is that he subscribed for three $100 Liberty Bonds, and that they were paid for by being charged up against his account. Mr. Ecklin says that he went to the bank and saw the bonds right by the window; that Zell clipped the coupons and gave him the money for them about the last week in May, 1921; that Zell asked him for his receipt to show for the bonds, and that Ecklin told him he had no receipt; that Zell seemed to think that he had, and told him to go home and look for the receipt, and if he could not find it, to come back and he would see that he got the Liberty Bonds, but before he got back the bank closed. Under these circumstances, the claimant is allowed his claim as a second class claim, which is accordingly ordered, and the exception is sustained to that extent.

The claim of the Conestoga National Bank, as trustee of Isaac R. Eby, was listed by the receiver in the claims of the second class at $2758.84. It was shown that the amount of funds of this trust estate paid to the Agricultural Trust Company on Sept. 15, 1917, was $8008, and to that was added $160, making a total of $8168; and that certain checks from time to time were drawn against it. On Feb. 19, 1921, a check to "Transfer to Trust" for $3136.78 was signed "The Agricultural Trust Company, By Chas. D. Zell, Trustee of Isaac R. Eby Estate," and this closed the account on the ledger of the trust company. No account was ever opened afterwards of the trust funds. Certain other payments, however, were made, which caused an overdraft of $377.94, and this, deducted from the $3136.78, left $2758.84, the amount allowed by the receiver as a second class claim. This appears to be correct, and the exceptions are dismissed.

The claim of Adam Gehman and Enos Gehman, assignee of Adam M. Gehman, is presented for $741.07 and $5900. The case is a little complicated, and it is necessary to state specifically the facts. Gehman purchased through the Agricultural Trust Company certain War Savings Certificates and Government Bonds to the amount of $3000. The receipt for some, if not all of them, is signed by Frank E. Herr, assistant treasurer. On or about June 18, 1921, Gehman bought $1000 of bonds, and gave his check on the Agricultural Trust Company for $733.68 to Charles D. Zell, payable to cash. Zell transferred

the check to Willis R. Knox, with instructions to pay out of it an account which he owed at the Wheatland Auto Company for $533.68, and to send his wife, who was at Ocean Grove, $100. Knox got the check cashed at the People's Trust Company and deposited the money there, and then paid the bill of the Wheatland Auto Company and sent the $100 to Mrs. Zell. The balance of $100 yet remains on deposit in the People's Trust Company to the credit of Knox, who is willing to pay it wherever it is to go. It is admitted that $100 yet remains due on the $1000 bonds. Under this state of facts, I am of the opinion that the exceptants are entitled to participate as claimants of the second class, to the extent of the bonds purchased and also the amount of the check used by Zell. The value of the bonds can be ascertained in the same manner as in other cases of misappropriation passed upon above. The exception is to this extent sustained.

Two items are claimed by Elam H. Herr, one for $268.80, and the other for $1400. The transaction between Charles D. Zell, secretary and treasurer of the Agricultural Trust Company, was as follows: About April 1, 1920, Herr bought a property in Millersville. He had $1400 of Liberty Bonds and also twelve shares of the stock of the Agricultural Trust Company. To pay for his house he had to sell the bonds or the stock. Zell advised him to hold his trust company stock, and said, as "you are a stockholder here, and the bank will take care of you, . . . you will lose too much money on your Liberty Bonds, we will give you $1400 out of the bank, and you give your $1400 of bonds as security." He gave his note for $1400, with the Liberty Bonds as collateral. The Liberty Bonds disappeared, and Herr now claims them in this distribution. He also had an account at the trust company, and when it closed its doors the amount of the balance due to him was $268.80. Counsel for the receiver claims that Herr is not entitled to participate in the distribution, because his note is unpaid, and that the cash balance must be set off against the amount due by him. As the bonds were stolen, and it is not known when they were appropriated, Herr is entitled to the highest price obtainable in the market between the time of the making of the loan and the failure of the bank. If this sum is not sufficient to pay the note, then the deposit can be used to pay the balance. If it is ascertained that there is a balance due to him, then his claim should be listed in the first class for that amount. To this extent the exception is sustained.

The People's Trust Company, trustee for J. Frank Nissley, presents a claim for $2500, in the estate of Sarah Nissley, deceased. The former trustee was the Agricultural Trust Company. It was appointed by the Orphans' Court on Jan. 15, 1920, and on the same day gave its own bond for that amount. On Jan. 22, 1920, A. G. Haisey, the preceding trustee, gave his check to the Agricultural Trust Company for $2500. Although, on or about April 1, 1920, and on April 21, 1921, J. Frank Nissley received the income arising from the trust fund, no record appears on the books of the Agricultural Trust Company showing that any trust funds coming from the estate of Sarah Nissley were in its hands. Under these circumstances, the claim for $2500 must be rated under claims of the second class and allowed as such. The exception to this extent is sustained.

The next claim is that of James G. McSparran. On Nov. 29, 1920, the claimant borrowed from the Agricultural Trust Company $9962.22, and deposited as collateral security $10,000 bonds of the City of Berne, bearing 8 per cent. interest. On April 22, 1921, he owed interest on the note and $4500 of the principal. The amount claimed by him is $5664.67, and he is

3 D. & C.

listed among the second class claims for $4342.32. The bonds were misappropriated, and the whole question arising is, what was their value? We have already determined that the rule is that he should be allowed the highest price which the bonds would have brought between the date when they were pledged as collateral and the date of the failure of the trust company. Guided by this rule, the parties will work out the amount due. This is a second class claim, and the exception as such is sustained as thus indicated.

The exceptions filed by the attorney for the Commissioner of Banking, that certain claims listed should be stricken off because the parties have admitted that there is no balance due to them, are sustained, and the following claims are stricken off:

"Savings Account No. 406, Samuel J. Harsh, Bart, Pa., $1123.44.

"Savings Account No. 20, Milton H. Reitzel, 630 Plane Street, Columbia, Pa., $21.

"Savings Account No. 1262, Frank B. Shindel, 12 Coral Street, Lancaster, Pa., $11.12.

"Savings Account No. 2223, Eva K. Wiker, 567 Rockland Street, Lancaster, Pa., $10.42.

"Checking Account No. —, J. T. McMichael, Strasburg No. 1, or Alvordton, Ohio, $301.06."

The claim of Earl M. Light, No. 157 East Chestnut Street, Lancaster, Pa., which was allowed for $36, is reduced to $26.

It is agreed that the exception of Samuel Lazarowitz should be sustained, and that $75 should be added to his claim as listed, and this is accordingly done.

The claim of B. F. Davis for $8000 was presented. It appears that Mr. Davis left with the trust company $8000 of Second Liberty Government Bonds, to be exchanged for permanent bonds, and he took for the same the receipt of the Agricultural Trust Company, signed by Charles D. Zell. No record appears on the books of the company of these bonds. Zell was indicted for embezzling them, and he entered a plea of guilty. It is clear that this was no deposit within the meaning of the act of assembly, and that it is not embraced within the claims of the first class. It is, however, a liability of the trust company, and falls within the provisions relating to second class claims, and it is to be rated at the highest price which these bonds reached between March 12, 1921, and the date of the failure of the trust company. The exception to this extent is sustained.

The sum of $41, the costs of bringing Charles D. Zell into court, and also the costs which will be necessarily incurred in making a dividend of the assets, are ordered to be deducted from the funds in the hands of the receiver, and the receiver is hereby ordered to make and file a distribution of the balance in his hands among the several creditors according to the schedule filed by him, modified and changed, however, to the extent set forth in this opinion.

LANDIS, P. J., Dec. 23, 1922.—On Nov. 11, 1922, we handed down an opinion in which we passed upon all the exceptions filed to the distribution of the Banking Commissioner in the above case. There seems to be no definite practice provided for in the act as to what proceedings, if any, shall be had subsequent to such a determination. However, exceptions to the disposition of the various claims were filed on the part of Drexel & Co. and the Commercial Trust Company, by John A. Nauman, Esq., their attorney; by B. C. Atlee, Esq., as attorney for Charles H. Enders, and by O. S. Schaeffer, Esq., as

attorney for Hyman Mishkin, because the claims which had been presented by them on behalf of these parties were disallowed.

We have again examined our findings, and have come to the conclusion that they are correct. We, therefore, dismiss all the exceptions thus filed and confirm our former findings. Exceptions dismissed.

From George Ross Eshleman, Lancaster, Pa.